1   BALTODANO & BALTODANO LLP
    Hernaldo J. Baltodano, Bar No. 222286
2   Email: hjb@bbemploymentlaw.com
    Erica Flores Baltodano, Bar No. 222331
3   Email: efb@bbemploymentlaw.com
    1411 Marsh Street, Suite 102
4   San Luis Obispo, CA 93401
    Telephone (805) 322-3412
5   Facsimile (805) 322-3413

6   FELAHY LAW GROUP, APC
    Allen B. Felahy, Bar No. 190177
7   Email: afelahy@felahylaw.com
    Oscar Ramirez, Bar No. 236768
8   Email: oramirez@felahylaw.com
    Boris Sorsher. Bar No. 251718
9   4000 Cover Street, Suite 100
    Long Beach, California 90808
10  Phone: (562) 499-2121
    Fax:    (562) 499-2124

11
    Attorneys for Plaintiff
12  GUADALUPE MEJIA

13                  UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15

16  | GUADALUPE MEJIA, as an individual | Case No.: 2:11-CV11-08879-DDP-JCGx |
    | and on behalf of all others similarly situated, | |

17  |                                    | **CLASS ACTION** |
                      Plaintiff,

18         vs.                            **PLAINTIFF'S NOTICE OF
                                          MOTION AND MOTION FOR
19  ALLIANCE RESIDENTIAL, LLC, dba        PRELIMINARY APPROVAL OF
    Alliance Residential Company; and     CLASS ACTION SETTLEMENT**
20  DOES 1 through 25,
                                          Judge:  Hon. Dean D. Pregerson
21                    Defendants.         Date:   August 27, 2012
                                          Time:   10:00 a.m.
22                                        Ctrm.:  3

23

24

25

26

27

28                                1

NOTICE IS HEREBY GIVEN that on Monday, August 27, 2012 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Central District of California before the Honorable Dean D. Pregerson, Plaintiff Guadalupe Mejia ("Plaintiff") individually and on behalf of all others similarly situated, will and does hereby move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e):

1. Preliminarily certifying the classes for settlement purposes;

2. Preliminarily appointing Plaintiff as Class Representative for settlement purposes;

3. Preliminarily approving Hernaldo J. Baltodano of Baltodano & Baltodano LLP, and Allen B. Felahy of the Felahy Law Group, APC as Class Counsel for settlement purposes;

4. Preliminarily approving the class action settlement based upon the terms set forth in the Stipulation of Settlement of Class Action ("Settlement Agreement");

5. Scheduling a final fairness hearing for _____, 2012 to consider final approval of the Settlement Agreement, entry of a proposed final judgment, Plaintiff's counsel's Motion for Reasonable Attorneys' Fees and Costs, and Plaintiff's Motion for the Class Representative Enhancement Payment;

6. Appointing CPT Group, Inc., as the third-party Claims Administrator for mailing notices and for claims administration; and

7. Approving the proposed Class Notice, Claim Form, and Exclusion Form, and ordering they be disseminated to the proposed settlement classes as provided in the Settlement Agreement.

1  This Motion is based upon the supporting Memorandum of Points and
2  Authorities, the Declarations of Hernaldo J. Baltodano and Allen B. Felahy, the
3  proposed Order, the Settlement Agreement, and all of the other exhibits filed
4  herewith.

5  Dated: July 30, 2012                    Respectfully submitted,

6                                          BALTODANO & BALTODANO LLP

7

8

9                                          Hernaldo J. Baltodano, Esq.
10                                         Erica Flores Baltodano, Esq.
                                           Attorneys for Plaintiff and the Proposed
11                                         Settlement Class

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          3

# **TABLE OF CONTENTS**

I.    INTRODUCTION. ................................................................................1

II.   FACTUAL SUMMARY. .....................................................................3

   A.    Plaintiff's Claims. ....................................................................3

   B.    This Litigation's Procedural History.......................................5

   C.    The Parties' Formal and Informal Discovery. .........................6

   D.    Hotly Contested Issues and the Parties' Exchange of Information and Analysis Informed the Proposed Class Action Resolution. ...............................7

   E.    The Proposed Class Action Settlement Provides Significant Monetary Relief. .........................................................................................9

      1.    The Settlement Provides for Significant Monetary Payments to Settlement Class Members........................................................10

      2.    The proposed Class Representative and Class Counsel Must File Separate Motions for Incentive Payments and Reasonable Attorney's Fees and Costs, Respectively. ........................................11

III.  THE PROPOSED CLASS ACTION SETTLEMENT MERITS PRELIMINARY APPROVAL. ........................................................12

   A.  The Settlement is Within the Range of Possible Approval...........................13

   B.  The Settlement is a Result of Serious, Informed and Non- Collusive Negotiations.................................................................................14

   C.  The Proposed Settlement is Devoid of Obvious Deficiencies. ....................14

IV.  THIS COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES...........................................................15

   A.    Rule 23(a)(1) Numerosity Is Satisfied. .................................15

   B.    Rule 23(a)(2) Commonality Is Satisfied................................15

   C.    Rule 23(a)(3) Typicality Is Satisfied. ....................................16

   D.    Rule 23(a)(4) Adequacy Is Satisfied. ....................................17

   E.    Rule 23(b)(3) Predominance Is Satisfied. ..............................18

i

1   V.   THE NOTICE PROCEDURE SATISFIES DUE PROCESS. ........................18

2   VI.   CONCLUSION. .......................................................................................19

## TABLE OF AUTHORITIES

### CASES

*Alonzo v. Maximus, Inc.*, Case No. 2:08-CV-06755-JST (MANx), 2011 WL
   2437444 (C.D. Cal. June 17, 2011)....................................................18

*Amchem v. Windsor*, 521 U.S. 591(1997). .............................................18

*California Rural Legal Assistance v. Legal Services Corp.*,
   917 F.2d 1171, 1175 (9th Cir. 1990). ..............................................16

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992)....................13

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) ............................18

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989). .....................12

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). ............16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)......................13,15

*Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............13

*Huntington Mem'l Hosp. v. Superior Court* (2005) 131 Cal.App.4th 893..............8

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988) ....................15

*Martin v. FedEx Ground Package System, Inc.*, Case No. C 06-6883 VRW, 2008
   WL 5478576 (N.D. Cal. December 31, 2008) ........................................12

*Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003)....................................12

*Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010)................18

*National Rural Tele. Coop. v. DIRECT TV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)..........................................................14

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal.App.4th 1112 (2012) ......................9

*West v. Circle K Stores, Inc.*, Case No. CIV. S-04-0438 WBS GGH,
   2006 WL 1652598 (E.D. Cal. June 13, 2006). ......................................14

ii

1
2

## <u>STATUTES</u>

3    California Labor Code Section 204.................................................5

4    California Labor Code Section 226.................................................5

5    California Labor Code Sections 201-204.........................................5

6    California Labor Code Section 510.................................................5

7    California Labor Code Section 558.................................................5

8    California Labor Code Section 1194................................................5

9    California Labor Code Section 1198................................................5

10   California Business and Professions Code Section 17200.........................5

11   Fed. R. Civ. Proc. 30(b)(6)........................................................7

12   California Labor Code Section 510(a).............................................7

13   29 U.S.C. § 207(e)(3)(a) ...........................................................8

     29 U.S.C. § 207(e)(3); .............................................................8

14   29 U.S.C. § 207(e). ................................................................8

15   California Code of Regulations § 13520 ...........................................9

16   Fed. R. Civ. Proc. 23(e)(2)........................................................12

17   Fed. R. Civ. Proc. 23(a)(1)........................................................15

18   Fed. R. Civ. Proc. 23(a)(2)........................................................15

19   Fed. R. Civ. Proc. 23(a)(3)........................................................16

20   Fed. R. Civ. Proc. 23(b)(3) ......................................................18

21   Fed. R. Civ. Proc. 23(b)(3) ......................................................18

22   Fed. R. Civ. Proc. 23(e). .........................................................12

23

## <u>MISCELLANEOUS</u>

24   DLSE Enforcement Policies & Interpretations Manual § 49.12 (2002) .................8

25   DLSE Manual § 49.1.2.4(3)...........................................................8

26   Manual for Complex Litigation (Third) § 30.41 ....................................13

27   Newberg on Class Actions (4th ed. 2002) § 11:24,25..........................12, 13

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

Plaintiff Guadalupe Mejia ("Plaintiff"), individually and on behalf of the putative Settlement Classes, requests that this Court preliminarily approve the Parties' Stipulation of Settlement of Class Action ("Settlement Agreement"), entered by Plaintiff and Defendant Alliance Residential, LLC dba Alliance Residential Company ("Alliance").[1] The Settlement Class consists of at least 687 hourly non-exempt employees who worked at Alliance's residential properties in California from July 26, 2007 through the date of preliminary approval. Plaintiff, on behalf of himself and other hourly, non-exempt employees, filed this lawsuit for unpaid overtime wages, related penalty claims, restitution and injunctive relief.  In this lawsuit, Plaintiff alleges that Alliance failed to pay all overtime wages by failing to include non-discretionary bonuses, incentive pay, and other forms of pay augmentation into the regular rate of pay for overtime purposes. As a result of the alleged regular rate miscalculation, Plaintiff contends, Alliance violated its wage statement and final wage payment obligations under the Labor Code.

Through the Settlement Agreement, Alliance has agreed to pay one-million dollars ($1,000,000) (the "Common Fund") to resolve Plaintiff's claims on a class-wide basis.  For settlement purposes only, the parties agree that the Settlement Class is defined as:

///

///

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Hernaldo J. Baltodano ("Baltodano Decl."), filed herewith.  The proposed Class Notice is attached as Exhibit 2 and the proposed claim form and opt-out form are attached as Exhibits A and B, respectively, to the proposed Class Notice.

1

(1) <u>Overtime Pay Class Members</u>

All current and former hourly non-exempt employees of Alliance who worked at residential properties in the State of California and received incentive pay, bonuses, and/or commissions and overtime compensation within the period of July 26, 2007 through the Preliminary Approval Date.

(2) <u>Wage Statement Class</u>

All current and former hourly non-exempt employees of Alliance who worked at residential properties in the State of California and received incentive pay, bonuses, and/or commissions and were provided wage statements within the period of July 26, 2010 through the Preliminary Approval Date.

(3) <u>Waiting Time Penalty Class</u>

All former hourly non-exempt employees of Alliance who worked at residential properties in the State of California and received incentive pay, bonuses, and/or commissions within the period of July 26, 2008 through the Preliminary Approval Date.

As a result of this settlement, members of the Overtime Pay Class will receive compensation for their alleged underpaid overtime wages resulting from the alleged miscalculation of the regular rate of pay, and members of the Wage Statement and Waiting Time Penalty classes will receive additional monetary payments. Moreover, as a result of this lawsuit, Alliance changed its overtime policies so that it now includes the alleged non-discretionary bonuses and incentive pay in the regular rate of pay for hourly non-exempt employees when overtime is worked in corresponding pay periods.

2

1        The Settlement Agreement and Notice distribution plan were the products

2   of an informed analysis of the claims and defenses, as well as the likelihood of

3   obtaining and defeating class certification, and extensive non-collusive and arm's

4   length settlement negotiations by experienced employment counsel. Thus, this

5   settlement is the product of serious, informed, non-collusive negotiations, has no

6   obvious deficiencies, does not grant preferential treatment, and falls within the

7   range of possible approval. Therefore, Plaintiff seeks (1) preliminary approval of

8   the Settlement Agreement; (2) certification of the Settlement Class; (3)

9   appointment of Plaintiff as Class Representative; (4) appointment of Hernaldo J.

10   Baltodano of Baltodano & Baltodano LLP and Allen B. Felahy of the Felahy Law

11   Group, APC as Class Counsel; (5) approval of the parties' proposed form and

12   method of notifying members of the Settlement Classes; (6) an Order scheduling

13   Monday, December 24, 2012 as the hearing date for Final Approval of the Class

14   Settlement, including Plaintiff's counsel's Motion for Reasonable Attorneys' Fees

15   and Costs, and Plaintiff's Motion for the Class Representative Enhancement

16   Payment; and (7) entry of an Order Granting Preliminary Approval of the Class

17   Action Settlement.

18   **II.    FACTUAL SUMMARY.**

19       **A.    Plaintiff's Claims.**

20           Alliance manages dozens of residential properties in the State of California.

21   It is one of the largest private apartment owners and residential management

22   companies in the United States. Plaintiff worked as an hourly non-exempt

23   employee at Union Lofts, one of Alliance's residential properties located in Los

24   Angeles, California, from September 2009 to February 2011. *See* Declaration of

25   Hernaldo J. Baltodano ("Baltodano Decl."), ¶8. Plaintiff's job title was porter

26   and his job consisted of tending to the up keeping of the grounds, amenities, and

27   assisting with maintenance requests. During his employment with Alliance,

28

3

1  Plaintiff worked overtime hours and received several bonuses which he
2  understood were meant to incentivize him to portray a luxurious and inviting
3  residential community.

4       This lawsuit arises from Alliance employing Plaintiff and hundreds of other
5  hourly non-exempt employees at dozens of residential facilities in California from
6  July 26, 2007 to the present.  Plaintiff contends that he and other hourly non-
7  exempt employees received non-discretionary bonuses and other forms of
8  incentive pay and worked overtime hours in the corresponding pay periods during
9  which such incentive pay was earned.  However, Plaintiff maintains that Alliance
10  failed to include non-discretionary bonuses and incentive pay into the regular rate
11  of pay for overtime purposes.  Consequently, Plaintiff claims that Alliance failed
12  to pay all required overtime wages and, consequently, furnished inaccurate wage
13  statements to him and other hourly non-exempt employees and, with respect to
14  Alliance's formerly employed hourly non-exempt employees, failed to timely pay
15  all final wages at the time of termination.

16       Alliance vehemently denies Plaintiff's claims.   Among other things,
17  Alliance maintains that it paid all of Plaintiff's overtime wages because any
18  bonuses and/or incentive pay was discretionary, thereby precluding its inclusion
19  in the regular rate of pay.  With respect to Plaintiff's claim for wage statement
20  penalties, Alliance asserts that, assuming Plaintiff could prevail on his overtime
21  claim based on Alliance alleged miscalculation of the regular rate of pay, any
22  failure to issue an accurate and complete wage statement was neither intentional
23  nor willful.  Moreover, to the extent that Plaintiff received a wage statement that
24  was allegedly inaccurate or incomplete, Alliance maintains that Plaintiff suffered
25  no actual damage or harm as a result.  And with respect to Plaintiff's claim for
26  waiting time penalties, Alliance asserts that its good-faith belief that it need not
27  include bonuses and incentive pay in the regular rate of pay precludes the

28                                    4

1   imposition of waiting time penalties since Plaintiff could not prove that Alliance's

2   alleged failure to pay all final wages at the time of termination was "willful."  For

3   these reasons, Alliance asserts that it did not engage in any unfair business

4   practices and denies liability under the Private Attorneys General Act.  Finally,

5   Alliance maintains that Plaintiff's claims were improper for class treatment under

6   Rule 23 of the Federal Rules of Civil Procedure.

7   **B.    This Litigation's Procedural History.**

8       On July 26, 2011, Plaintiff filed his Complaint in the Los Angeles Superior

9   Court, Case No. BC 466175, alleging causes of action for: (1) Failure to Pay

10   Overtime in violation of California Labor Code ("Labor Code") sections 204,

11   510, 558, 1194, and 1198; (2) Violation of Labor Code section 226 (wage

12   statement violations); (3) Violation of Labor Code sections 201-203 (waiting time

13   penalties); and (4) Unfair Competition pursuant to Business & Professions Code

14   section 17200 *et seq.*   On August 10, 2011, Plaintiff filed a First Amended

15   Complaint asserting the same causes of action in the original complaint and

16   adding a fifth cause of action for civil penalties under the Private Attorneys

17   General Act, Labor Code sections 2698 *et seq.*   On October 26, 2011, Alliance

18   removed the case to the United States District Court, Central District of

19   California, Case No. 2-11-CV11-08879-DDP (JCGx).  On November 14, 2011,

20   Plaintiff filed a motion to remand.  However, on December 23, 2011, Plaintiff

21   withdrew his motion for remand following Alliance's opposition filed on

22   December 19, 2011.

23       On January 13, 2012, the parties filed their Joint Rule 26(f) Report

24   pursuant to Federal Rules of Civil Procedure 16 and 26, and C.D. Cal. Local Rule

25   26-1.  In that Joint Report, the parties indicated private mediation as their

26   preferred method of ADR.   In its Order dated January 31, 2012, the Court

27   continued the Scheduling Conference to September 10, 2012.

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

After months of written and deposition discovery, on May 9, 2012, the parties participated in a private, all-day mediation session in Los Angeles with Mark S. Rudy, a highly respected wage and hour class action mediator. *See* Declaration of Allen B. Felahy ("Felahy Decl."), ¶6.   Although the parties were unable to reach a resolution at the mediation session, Mr. Rudy made a mediator's proposal for a class-wide resolution which would expire on June 1, 2012. Felahy Decl., ¶6.   It was estimated that the total aggregate of underpaid overtime wages to the putative class based on the alleged regular rate miscalculation was approximately $90,000 to $110,000. Baltodano Decl., ¶11.   In the interim, and at Plaintiff's counsel's request, Alliance produced a class-wide sampling of payroll and bonus and incentive pay data to allow Plaintiff to assess the amount of alleged underpaid overtime wages due to the putative class based on the alleged miscalculation of the regular rate of pay. Felahy Decl., ¶6.   Alliance agreed, and produced a sample of class-wide data pertaining to the number of bonuses paid to, and the number of overtime hours worked by, members of the putative class. Felahy Decl., ¶6.   After reviewing and analyzing this data, counsel for Plaintiff accepted Mr. Rudy's mediator's proposal. Felahy Decl., ¶6.   In the weeks that followed, counsel for Plaintiff and Alliance exchanged multiple drafts of a class-wide Settlement Agreement and, after negotiating several terms in the agreement, executed the Settlement which Plaintiff hereby submits to the Court for preliminary approval. Baltodano Decl., ¶12.

## C.   The Parties' Formal and Informal Discovery.

In addition to exchanging their Rule 26 initial disclosures in late January and February 2012, the parties served and responded to written discovery and engaged in depositions. Plaintiff responded to over 100 requests for production of documents, produced responsive documents, and testified in deposition. Baltodano Decl., ¶10. Plaintiff also propounded dozens of special interrogatories,

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    requests for admission, and requests for production of documents to Alliance, and
2    served several third-party subpoenas and third-party deposition subpoenas.
3    Baltodano Decl., ¶10.  In response, Alliance provided verified interrogatory
4    responses and produced hundreds of pages of documents including, but not
5    limited to, payroll data and bonus data for Plaintiff, bonus and incentive plan
6    documents, and employee handbooks. Baltodano Decl., ¶10; Felahy Decl., ¶3.
7    And as noted above, Alliance also produced a sampling of payroll and bonus data
8    for members of the putative class in the wake of the April 9, 2012 mediation.
9    Felahy Decl., ¶6. Plaintiff's counsel also travelled to Phoenix, Arizona to take the
10   depositions of Alliance's Director of Risk Management, Cameron Omoto, and
11   Alliance's corporative representative regarding, among other things, Alliance's
12   bonus and incentive compensation plans and overtime policies and practices
13   pursuant to Federal Rule of Civil Procedure 30(b)(6). Baltodano Decl., ¶10;
14   Felahy Decl., ¶4.

> **D.    Hotly Contested Issues and the Parties' Exchange of Information and Analysis Informed the Proposed Class Action Resolution.**

17        Plaintiff's overtime claim based on the alleged miscalculation of the
18   regular rate of pay for overtime purposes was the principal issue in dispute among
19   the parties.   Plaintiff claimed that Alliance's hourly non-exempt employees
20   received several types of performance-based bonuses during the putative class
21   period, such as quarterly bonuses, leasing bonuses, occupancy bonuses, renewal
22   bonuses, and delinquency bonuses, but that Alliance failed to include this
23   incentive pay in the regular rate of pay for overtime purposes.

24        Labor Code Section 510(a) requires that employees receive overtime
25   compensation at one and one-half times the *regular rate of pay* for hours worked
26   in excess of eight hours in one workday and/or in excess of 40 hours in one
27   workweek.  Because neither the Labor Code nor California's Industrial Welfare

Commission orders define "regular rate," California courts follow the standards adopted by the United States Department of Labor. *See Huntington Mem'l Hosp. v. Superior Court* (2005) 131 Cal.App.4th 893, 902-903. The Fair Labor Standards Act ("FLSA") defines the "regular rate" as including "all remuneration for employment paid" to employees, and is calculated by dividing the total compensation paid for each workweek by the number of hours worked that week. *See* 29 U.S.C. § 207(e). Non-discretionary incentive pay must be included in the regular rate of pay. *See* 29 U.S.C. § 207(e)(3)(a) ("Sums paid in recognition of services during a given period if . . . (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly").

Alliance maintained that its various bonuses were location-specific and discretionary and, therefore, need not be included in the regular rate of pay for overtime purposes. S*ee* 29 U.S.C. § 207(e)(3); DLSE Enforcement Policies & Interpretations Manual § 49.12 (2002) § 49.1.2.4(3). Bonuses are discretionary if "both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 U.S.C. § 207(e)(3)(a); *see also* 29 C.F.R. § 778.211 ("In order for a bonus to qualify for exclusion as a discretionary bonus under section 207(e)(3)(a) the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid."); *see also* DLSE Manual § 49.1.2.4(3) ("Sums paid in recognition of services performed during a given period" are discretionary if "both the fact that payment is to be made and

8

the amount of payment are determined at the sole discretion of the employer" and "not pursuant to any prior contract, agreement or promise.").

Thus, Alliance asserted that it could not be liable for wage statement penalties because its wage statements were accurate and complete since the bonuses were properly excluded as "discretionary." Alliance also claimed that its good-faith belief that bonuses need not be included in the regular rate of pay precluded imposition of wage statement penalties because Plaintiff could not prove that Alliance's conduct was knowing and intentional. Similarly, Alliance maintained that its good-faith defense that bonuses need not be included in the regular rate of pay because they were discretionary precluded the imposition of waiting time penalties to former employees because its conduct was not "willful." *See* California Code of Regulations § 13520 (a "good-faith" dispute exists to waiting time penalties "when an employer presents a defense, based in or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist").

In short, these issues – as well as Alliance's assertion that the Court's vested discretion to reduce the amount of penalties under PAGA and that this penalty claim was derivative of the other claims – gave the parties reason to seriously consider this proposed class action settlement. *See, e.g., Thurman v. Bayshore Transit Mgmt.*, 203 Cal.App.4th 1112, 1136 (2012) (reducing penalties because maximum amount "would be unjust – if not also arbitrary, oppressive, or confiscatory").

## E. The Proposed Class Action Settlement Provides Significant Monetary Relief.

The proposed Settlement Class consists of at least 687 hourly non-exempt employees who worked at Alliance's residential properties in the state of

9

California from July 26, 2007 through the date of preliminary approval.  Alliance will pay one-million dollars ($1,000,000) (the "Common Fund"), from which Court-approved attorneys' fees and costs, the enhancement to the Named Plaintiff, the PAGA penalties, and the Settlement Administration Costs will be deducted as follows:

| | |
|---|---|
| Common Fund: | $1,000,000.00 |
| Minus Court-approved attorneys' fees: | $333,000.00 (33 1/3%) |
| Minus Court-approved costs: | $36,500.00 |
| Minus Court-approved Incentive Payment: | $5,000.00 |
| Minus PAGA Settlement Allocation: | $25,000.00 |
| Minus Settlement Administration Costs: | $20,000.00 |
| **Net Settlement Amount:** | **$580,500** |

The Net Settlement Amount will be used to fund the payments to members of the Settlement Class.  At least 50% of the Net settlement Amount is guaranteed to be distributed regardless of the number of members of the Settlement Class Members who file timely and valid claims. *See* Exhibit 1 at Sections I.P and XI.C.

### 1.     The Settlement Provides for Significant Monetary Payments to Settlement Class Members.

Under the proposed class action settlement, the Net Settlement Fund will consist of approximately $580,500, which will be used to compensate members of the Overtime Pay Class, Wage Statement Class, and Waiting Time Penalty Class.[2] Each class member's settlement share will be based on the on the proportionate number of bonus payments – referred to as a "settlement unit" – that he or she was paid by Alliance from July 26, 2007 through the date of

---

[2] *See* Exhibit 1 at Sections I.P and I.Q.

preliminary approval.[3] The claims administrator will determine the value of a settlement unit by dividing the Net Settlement Fund (i.e., $580,500) by the total number of bonus payments to all members of the settlement class. *See* Exhibit 1 at Section XI.A.  Based on the proportionate value for each bonus payment, each class member will be assigned settlement units in accordance with the following allocation:

1. Each member of the Overtime Pay Class shall receive 75% (0.75) of one settlement unit for each bonus paid to the respective Overtime Pay Class member from July 26, 2007 through the date of preliminary approval;

2. Each member of the Wage Statement Class shall receive 10% (0.10) of one settlement unit for each bonus paid to the respective Wage Statement Class member from July 26, 2010 through the date of preliminary approval; and

3. Each member of the Waiting Time Penalty Class shall receive 15% (0.15) of one settlement unit for each bonus paid to the respective Waiting Time Penalty Class member from July 26, 2007 through the date of preliminary approval. *See* Exhibit 1 at Section XI.A.

The lump sum payment to each member of the settlement class not excluding him/herself will be determined by multiplying the value of a settlement unit by the participating class member's total settlement units as determined by the claims administrator. *See* Exhibit 1 at Section XI.A.

> **2.   The proposed Class Representative and Class Counsel Must File Separate Motions for Incentive Payments and Reasonable Attorney's Fees and Costs, Respectively.**

The parties agreed that Plaintiff will seek (and Alliance will not oppose) an incentive payment of $5,000 for serving as the Class Representative and to

---

[3] *See* Exhibit 1 at Section XI.A.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

1  compensate him for his role in bringing and prosecuting this action. *See* Exhibit 1

2  at Section XIV.  The named Plaintiff responded to written discovery, produced

3  documents, assisted counsel with prosecuting this lawsuit, and testified at his

4  deposition. Baltodano Decl., ¶8.  Plaintiff's counsel will file a separate motion for

5  approval of the incentive payment to the named Plaintiff.

6       Additionally, Alliance has agreed not to oppose proposed Class Counsel's

7  application for reasonable attorneys' fees and costs incurred in litigating this

8  action. *See* Exhibit 1 at Section XIII.  Proposed Class Counsel will file a separate

9  motion for approval of reasonable attorneys' fees not to exceed 33 and 1/3% of

10  the Common Fund for all past and future attorneys' fees necessary to prosecute,

11  settle and administer the Litigation and this proposed Settlement and their

12  reasonable litigation costs.  Baltodano Decl., ¶15.  In this regard, requests for

13  attorneys' fees amounting to 33 and 1/3% of a common fund have been

14  previously approved in similar wage and hour class action settlements. *See, e.g.,*

15  *Martin v. FedEx Ground Package System, Inc.*, Case No. C 06-6883 VRW, 2008

16  WL 5478576 (N.D. Cal. December 31, 2008) (approving 33% attorney fee

17  award); *see also Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003)

18  (affirming a 33% award); 4 Newberg and Conte, Newberg on Class Actions §

19  14.6 (4th ed. 2007) ("Empirical studies show that, regardless whether the

20  percentage method or the lodestar method is used, fee awards in class actions

21  average around one-third of the recovery").

22  **III.   THE  PROPOSED  CLASS  ACTION  SETTLEMENT  MERITS**

23        **PRELIMINARY APPROVAL.**

24       It is the policy of the federal courts to encourage settlement. *See Franklin*

25  *v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989). "Litigation settlements

26  offer parties and their counsel relief from the burdens and uncertainties inherent

27  in trial. . . The economics of litigation are such that pretrial settlement may be

28   

1    more advantageous for both sides than expending the time and resources
2    inevitably consumed in the trial process." *Franklin*, 884 F.2d at 1225. With
3    respect to class action settlements, Rule 23(e) of the Federal Rules of Civil
4    Procedure requires court approval of any settlement of a class action. *See* Fed. R.
5    Civ. Proc. 23(e)(2) (a court may approve a class action settlement only if it finds
6    the settlement fair, reasonable, and adequate).  Judicial approval of a class action
7    settlement entails a two-step process:  (1) an early (preliminary) review by the
8    Court; and (2) a final review after notice has been distributed to the class
9    members for their comment or objections. *See* Manual for Complex Litigation
10   (Third) § 30.41.  At the preliminary approval stage, the Court does not need to
11   conclusively determine whether the settlement is fair, reasonable, and adequate.
12   *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-1027 (9th Cir. 1998).  That
13   question will be addressed at the final approval hearing after class members are
14   given an opportunity to weigh-in on the proposed settlement.

15        At this stage, therefore, the Court should grant preliminary approval of the
16   settlement and direct that notice be given if the proposed settlement (1) falls
17   within the range of possible approval; (2) appears to be the product of serious,
18   informed and non-collusive negotiations; and (3) has no obvious deficiencies. *See*
19   Manual for Complex Litigation (Third) § 30.41; Newberg on Class Actions (4th
20   ed. 2002) § 11:24-25.  The Ninth Circuit has a "strong judicial policy that favors
21   settlement, particularly where complex class action litigation is concerned." *See*
22   *In re Heritage Bond Litigation*, 2005 WL 1594403 at *2 (C.D. Cal. June 10,
23   2005), citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).   As
24   discussed below, the proposed settlement satisfies these criteria.

25        **A.    The Settlement is Within the Range of Possible Approval.**

26        Here, the proposed settlement will compensate members of the Overtime
27   Pay Class for their estimated alleged underpaid overtime wages resulting from
28

1 Alliance's alleged failure to include bonuses and incentive pay in the regular rate
2 of pay. Baltodano Decl., ¶13. Moreover, members of the Wage Statement
3 Penalty and Waiting Time Penalty classes will also receive enhancements based
4 on when they received bonus payments in order to calculate penalty payments
5 under Labor Code Sections 203 and 226(e). *Id.* Based on these factors, Plaintiff
6 submits that the proposed settlement is within the range of possible approval,
7 such that notice of the settlement is disseminated so that members of the
8 settlement class can consider the settlement. *See West v. Circle K Stores, Inc.*,
9 Case No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 at *9 (E.D. Cal. June
10 13, 2006).

11   **B.**  **The Settlement is a Result of Serious, Informed and Non-**
12     **Collusive Negotiations.**

13   The proposed settlement is also the product of arms-length, non-collusive
14 negotiations between experienced employment counsel that resulted only after a
15 significant amount of written and deposition discovery and informal exchange of
16 information. Ultimately, settlement was reached through arm's length
17 negotiations weeks after a full day session of mediation with Mark S. Rudy, a
18 very experienced wage and hour class action mediator, and the exchange and
19 analysis of payroll data. Felahy Decl., ¶¶ 6 & 8-12. Ultimately, the parties
20 recognized the risk, expense, delay, and uncertainty involved and reached this
21 proposed class action settlement. Felahy Decl., ¶ 8-12. "In most situations, unless
22 the settlement is clearly inadequate, its acceptance and approval are preferable to
23 lengthy and expensive litigation with uncertain results." *National Rural Tele.*
24 *Coop. v. DIRECT TV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)[internal
25 citations omitted].

26 ///

27 ///

28            14

## C.     <u>The Proposed Settlement is Devoid of Obvious Deficiencies</u>.

This factor also weighs in favor of preliminary settlement approval because there are no obvious deficiencies in the proposed class action settlement. As detailed above, the Net Settlement Fund will consist approximately of $580,500, which will be used to compensate members of the Overtime Pay Class, Wage Statement Class, and Waiting Time Penalty Class – all of whom are Alliance's current and former non-exempt hourly employees. In exchange for releasing additional claims under Labor Code Sections 203 and 226, members of the Waiting Time Penalty and Wage Statement Penalty classes will receive monetary enhancements. Thus, no segment of the settlement class is given undue preferential treatment at the expense of others.

Similarly, the proposed incentive payment of $5,000 to Plaintiff does not bestow preferential treatment. As will be fully briefed in a separate motion for approval of the requested incentive payment, Plaintiff's efforts in assisting with crafting written discovery, investigation, responding to written discovery, producing documents, assisting Class Counsel with strategy, and testifying in deposition helped proposed Class Counsel secure this settlement. Baltodano Decl., ¶8. In addition, Plaintiff also agreed to a full release that extends beyond the release of claims applicable to members of the settlement classes. *See* Exhibit 2 at Section VII.B.

## IV.     <u>THIS COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES</u>.

Because Plaintiff seeks preliminary approval of a proposed class action settlement, this Court must determine whether the Settlement Class meets the requirements for class certification. *See Hanlon*, *supra*, 150 F. 3d at 1019-1020.

///

///

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

**A.   Rule 23(a)(1) Numerosity Is Satisfied.**

Plaintiff asserts that numerosity is satisfied. According to Alliance's records, there are at least 687 individuals in the proposed Settlement Class. Thus, the class is sufficiently numerous. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (holding that 40 class members satisfies numerosity).

**B.   Rule 23(a)(2) Commonality Is Satisfied.**

The Ninth Circuit construes the commonality prerequisite permissibly. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, Plaintiff asserts that the Settlement Class satisfies commonality because common questions of fact and law exist which arise from Plaintiff and other hourly non-exempt employees in California receiving bonuses and other forms of incentive pay, but not having such compensation included in their regular rate of pay for overtime purposes when they worked overtime hours. Consequently, there are other common questions regarding Alliance's calculation of the regular rate of pay for overtime purposes, the payroll data/information include in the wage statements issued by Alliance to hourly non-exempt employees in California, and whether Alliance timely paid all required overtime wages at termination of employment.

**C.   Rule 23(a)(3) Typicality Is Satisfied.**

Plaintiff also maintains that typicality is satisfied because "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical if they are reasonably co-extensive with those of absent class members." *See Hanlon, supra*, 150 F.3d at 1020; s*ee also California Rural Legal Assistance v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). Here, Plaintiff's Labor Code claims all stem from Alliance's alleged failure to include non-discretionary bonuses in the regular rate of pay for hourly non-exempt employees in the state of California.

16

As an hourly non-exempt employee who worked for Alliance in the state of California, Plaintiff's claims are typical because he was paid by the hour, worked overtime hours, and received incentive pay, but did not have any incentive pay included in his regular rate when he worked overtime hours. Consequently, Plaintiff asserts, he failed to receive all of his required overtime wages, received inaccurate wage statements throughout his employment, and failed to timely receive all of his final wages at termination. Thus, typicality is satisfied because Plaintiff is a member of the class he seeks to represent and possesses "the same interest" and suffered "the same injury" as the proposed settlement class. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

### D.   Rule 23(a)(4) Adequacy Is Satisfied.

Plaintiff also asserts that he is an adequate class representative under Rule 23(a)(4).   To satisfy this requirement, Plaintiff and his counsel must not have conflicts of interest with the proposed classes, and must vigorously prosecute the action on behalf of the class. *See Hanlon, supra*, 150 F.3d at 1020. Here, Plaintiff maintains that there is no conflict of interest between him and the settlement class.   Indeed, as a former hourly non-exempt employee who received bonuses throughout his period of employment (February 2011), but did not have such bonuses included in his regular rate, Plaintiff is a member of the Overtime Pay Class, Wage Statement Class, and Waiting Time Penalty Class.   Because of this lawsuit, Plaintiff asserts, he and other hourly non-exempt employees will receive all of their estimated underpaid overtime wages in addition to penalty compensation arising from the receipt of inaccurate wage statements and the late receipt of final wages.   Moreover, Alliance changed its overtime practices after Plaintiff filed this lawsuit, so that it now includes bonuses and/or incentive pay in the regular rate of pay for hourly non-exempt employees. Baltodano Decl., ¶13.

1    Finally, Plaintiff's counsel has no conflicts with the class and, as set forth

2  in the concurrently filed Declarations of Hernaldo J. Baltodano and Allen B.

3  Felahy, are adequate because they have considerable experience in wage and hour

4  law, including the prosecution and defense of wage and hour class actions. *See*

5  Baltodano Decl., ¶¶2-7; Felahy Decl., ¶7.  Both Mr. Baltodano and Mr. Felahy

6  have worked on numerous wage and hour class actions, published articles

7  regarding wage and hour topics, and received recognition for their work. *Id.*

8  Additionally, Mr. Felahy has distinguished himself in the field of employment

9  and labor law by editing a 2011 CEB guide on the subject of wage and hour law.

10  Felahy Decl., ¶7.

11    **E.    Rule 23(b)(3) Predominance Is Satisfied.**

12    Predominance tests "whether the proposed classes are sufficiently cohesive

13  to warrant adjudication by [class action] representation." *See Amchem v. Windsor*,

14  521 U.S. 591, 623 (1997).  In this regard, the critical inquiry is whether common

15  questions of fact and law predominate over individual ones.  Plaintiff asserts that

16  common questions concerning Alliance's alleged miscalculation of the regular

17  rate of pay for overtime purposes and resulting impact on its wage statements and

18  final payment obligations satisfy the predominance requirement. *See, e.g., Alonzo*

19  *v. Maximus, Inc.*, Case No. 2:08-CV-06755-JST (MANx), 2011 WL 2437444

20  (C.D. Cal. June 17, 2011) (overtime pay claim based on the alleged

21  miscalculation of the regular rate of pay certified under Rule 23(b)(3)); *Murillo v.*

22  *Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 476 (E.D. Cal. 2010) (in certifying

23  overtime claim based on regular rate miscalculation for settlement purposes, court

24  found that predominance established because "As this case turns on the legality of

25  a common method for calculation of overtime and uniform information on the

26  putative class members' payments stubs, it is clear that common legal questions

27  dominate this litigation such that class-wide adjudication is appropriate").

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

**V.     THE NOTICE PROCEDURE SATISFIES DUE PROCESS.**

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974). Thus, when the named parties of a class action lawsuit reach a proposed settlement, class members must be notified of the terms of the settlement. *See* Newberg on Class Actions (4th ed. 2002) § 11.30. Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchhill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004).

Here, the proposed notice procedure satisfies due process. The proposed Class Notice and related forms advise members of the Settlement Class of the essential terms of the settlement, defines the Settlement Class, sets forth the number of bonuses issued to each member of the Settlement Class and explains the recovery formula, sets forth the procedures and uniform deadline for filing a claim, opting out of the settlement or filing an objection to the proposed class action settlement, provides contact information for proposed Class Counsel, and provides specifics regarding the date, time, and place of the final approval hearing. *See* Exhibit 2 to the Baltodano Decl. The proposed settlement will be administered by a reputable claims administration company that will mail the notice and related forms via first-class regular U.S. Mail and perform skip trace searches to locate class members.

**VI.    CONCLUSION.**

For these reasons, Plaintiff respectfully request that the Court enter an Order (1) preliminarily approving the proposed class action settlement; (2) certifying the proposed Settlement Class; (3) appointing Plaintiff as the Class Representative; (4) appointing Hernaldo J. Baltodano of Baltodano & Baltodano LLP and Allen B. Felahy of the Felahy Law Group, APC as Class Counsel; (5)

19

1   appointing CPT Group, Inc. as the Claims Administrator; (6) approving the form

2   of the proposed Class Notice and related forms; (7) scheduling a Final Approval

3   Hearing date for _____, 2012 to determine the overall fairness of the

4   settlement and consider motions regarding reasonable attorney's fees and costs to

5   Class Counsel and the enhancement payment to Plaintiff.

6

7   Dated:  July 30, 2012           Respectfully submitted,

                                    BALTODANO & BALTODANO LLP

8

9

10                               Hernaldo J. Baltodano, Esq.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT